U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 FEB -3 PM 3: 23

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| JANE GRIFFIN ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| V. ) | Civil Action |
| ) | Docket No. 1:15-cv-23 |
| LINCARE, INC. ) | |
| ) | |
| Defendant ) | |

## COMPLAINT

NOW COMES the Plaintiff, Jane Griffin, by and through her attorneys Anderson & Eaton, P.C., and complain against the Defendant, Lincare, Inc., as follows:

### JURISDICTION AND VENUE

1.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, since the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the parties involved are citizens of different states or countries.

2.  Venue properly rests in the District of Vermont, pursuant to 28 U.S.C. § 1391 (a) and (d) since the events giving rise to the instant claims occurred in this district, the Plaintiff resides in this district, and the Defendant is not a Vermont corporation.

### PARTIES

3.  Plaintiff resides in the Town of Castleton, County of Rutland, and State of Vermont.

4.  Defendant, Lincare, Inc. is a Delaware corporation, with its principal place of business in Clearwater, Florida, registered to do business in the State of Vermont.

1

## STATEMENT OF THE CASE

5. Due to her own personal health needs for supplemental oxygen, Plaintiff leased a Helios oxygen system from the Defendant Lincare, Inc. beginning on or about September 9, 2008.

6. In addition to the oxygen system, Plaintiff also contracted with Defendant Lincare, Inc. to provide her with an oxygen tank, refills of liquid oxygen and other products and support services associated with the Helios oxygen system.

7. The oxygen system remained in its original condition with normal use by the Plaintiff until September 3, 2012 when Plaintiff was using the system to re-charge her portable oxygen supply system from the larger tank.

8. During the process of re-charging her portable oxygen system, the Plaintiff found that she was unable to separate the portable unit from the larger oxygen tank. Apparently the connection between the two pieces of equipment had become frozen and Plaintiff did not have sufficient strength to disconnect the portable unit from the larger tank.

9. Plaintiff became concerned when a white cloud-like vapor started coming from the tank which also began to make cracking and snapping noises. She contacted the customer service department and spoke with a representative from Lincare.

10. When Plaintiff described the situation that she was experiencing in her home (white cloud-like vapor filling her home and loud cracking and snapping noises coming from the tank), the Lincare customer service representative advised her to rock and twist the unit back and forth in an effort to separate the unit from the tank.

11. Ultimately the Plaintiff was successful in getting the portable unit to separate from the tank but the oxygen continued to release from the tank. The representative indicated that Plaintiff should allow the tank to continue to dissipate oxygen into her home. Plaintiff opened the windows and turned on a fan in an effort to cause the oxygen to mix with the other air in and around her home.

12. When the Plaintiff awoke the next morning she discovered that she had suffered severe burns or frostbite to her right foot as a result of her proximity to the liquid oxygen that had been leaking from the tank while she was attempting to disconnect the portable unit from the tank.

## COUNT ONE (Strict Liability)

13. The preceding paragraphs 1 through 12 are realleged and incorporated herein by reference as if fully set forth in this Count One.

14. The subject oxygen system was defective and unreasonably and/or inherently dangerous for its intended or reasonably foreseeable use when it was placed in the stream of commerce by the Defendant by virtue of unreasonably and/or inherently dangerous manufacturing defects and/or design defects.

15. The oxygen system was defective and unreasonably and/or inherently dangerous because it was manufactured/assembled with a defective valve system, which failed to disconnect from the tank after it was filled, as it was intended to do and which furthermore caused dangerous liquid oxygen to leak out into the surrounding room where it caused an unreasonable risk of harm to Plaintiff.

16. The oxygen system was defective and unreasonably and/or inherently dangerous because the part of parts in question failed to meet recognized industry standards.

17. The aforesaid defects existed when the oxygen system left the Defendant's control.

18. At the time of the Plaintiff's injury, the oxygen system had not been substantially altered or changed.

19. At the time of Plaintiff's injury, the oxygen system was being used for the purposes and in a manner normally intended and/or reasonably foreseeable.

20. As a direct and proximate result of the aforesaid defects, Plaintiff suffered severe, disabling and permanent injuries including, but not limited to, burns and/or frostbite of her right foot and toes, permanent impairment, pain and suffering, medical expenses, psychological injuries and emotional distress, and will continue to suffer pain and suffering, psychological injuries, emotional distress, and medical expenses in the future.

21. As distributor, and/or lessor of the oxygen system, Defendant is strictly liable to Plaintiff for her injuries.

## COUNT II – (Negligence)

22. The preceding paragraphs 1 through 21 are realleged and incorporated herein by reference as if fully set forth in this Count Two.

23. As designer, manufacturer, distributor, seller and/or lessor of the oxygen system Defendant owed a duty to the Plaintiff, a reasonably foreseeable user of the oxygen system, to inspect the oxygen system to insure it was reasonably safe and free from manufacturing and/or design defects which render it unreasonably dangerous to its users.

24. The Defendant negligently breached its duty by failing to inspect and/or failing to discover that the oxygen system was unreasonably and/or inherently dangerous in its manufacture and/or design.

25. As a lessor of the oxygen system maintaining a customer service hotline to advise customers experiencing difficulties with their oxygen systems, Defendant owed a duty to Plaintiff to provide her with advice and information that was reasonably calculated to keep her safe from exposure to unreasonable dangers and risks while she attempted to deal with the problems she was experiencing with her oxygen system.

26. The Defendant negligently breached its duty to provide Plaintiff with information that was reasonably calculated to keep her safe from exposure to unreasonable dangers and risks while she attempted to deal with the problems she was experiencing with her oxygen system by failing to advise her of the dangers she would be exposed to from the liquid oxygen if she put herself in a position where she might come into contact with the liquid oxygen that had leaked out onto her floor.

27. As a direct and proximate result of Defendant's breach of its duties, Plaintiff suffered severe, disabling and permanent injuries including, but not limited to, permanent impairment, pain and suffering, medical expenses, loss of earnings and earning capacity, psychological injuries and emotional distress, and will continue to suffer pain and suffering, psychological injuries, emotional distress, loss of earnings and earning capacity and medical expenses in the future.

WHEREFORE, Plaintiff demands judgment against the Defendant and prays for an award of (i) compensatory damages in excess of the jurisdictional limits of this Court; interest

and costs of suit; and (iii) all other relief to which Plaintiff may be entitled, both in law or in equity.

DATED at Rutland, Vermont this 3rd day of February, 2015.

Jane Griffin

BY: _____
Karl C. Anderson, Esquire
Anderson & Eaton, P.C.
128 Merchants Row, 7th Floor
Rutland, VT 05701
(802) 773-4700