UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JANE GRIFFIN,                              :
                                           :
        Plaintiff,                         :
                                           :
              v.                           :        Case No. 1:15-cv-23-jgm
                                           :
LINCARE, INC.,                             :
                                           :
        Defendant.                         :
_____           :

ORDER ON DEFENDANT'S MOTIONS TO EXCLUDE
EXPERT TESTIMONY AND FOR SUMMARY JUDGMENT
(Docs. 23, 24)

I.   Introduction

       In this diversity action commenced in February 2015, Plaintiff Jane Griffin asserts strict

liability and negligence claims against Defendant Lincare, Inc. ("Lincare") alleging it is liable for

frostbite burns to her foot caused by its oxygen system.  (Doc. 1 ("Compl.").)  Lincare moves, under

Federal Rules of Evidence 403 and 702, to exclude testimony of Plaintiff's retained expert, David

Dodge, regarding whether the Manufacturer's Operating Instructions were adequate and verbal

instructions given by Lincare's service representative were in accordance with those instructions.

(Doc. 23.)  Lincare also moves under Federal Rule of Civil Procedure 56 for summary judgment

arguing, incorporating its motion to exclude testimony, that Griffin has failed to present the

necessary admissible expert testimony to meet her burdens of proof on causation and breach of

duty.  (Doc. 24.)  Griffin opposes the motions[1] and Lincare filed replies.  (Docs. 26, 37, 38, 42.)  For

the reasons discussed below, the Court grants the motion in limine and grants in part and denies in

part the motion for summary judgment.

_____

[1] The Court notes that Plaintiff's filings are devoid of case citations and, accordingly, were of
little use to the Court in assessing the validity of Defendant's motions.

II.     Background[2]

Griffin, a retired nurse, alleges she was injured in September 2012 when, while attempting to disconnect the portable unit from the oxygen reservoir tank, leaking oxygen caused severe frostbite burns to her right foot.  (Compl. ¶¶ 8-12.)  The complaint includes claims for strict product liability (Count I) and negligence (Count II).  Id. ¶¶ 13-27.  She seeks compensatory damages, interest, and costs.  Id. at 5-6.

Griffin relies on supplemental oxygen 24 hours per day to treat bilateral diaphragmatic paralysis disorder.  She also has neuropathy (nerve damage) in her feet that causes tingling, burning, and numbness, and leaves her with no feeling in her toes and the ball of her foot.  (Doc. 39 at 1.)

Griffin had leased the Helios H300 Plus Portable and Reservoir, a liquid oxygen system, from Lincare since September 9, 2008.  Lincare, a provider of oxygen, respiratory, and home infusion products and services, did not manufacture the system, which consists of a portable unit and a liquid reservoir unit.  The portable unit is filled by pressing the bottom of the portable unit on top of the reservoir fill connector and opening the vent valve lever, allowing liquid oxygen to fill the portable unit.  It takes less than a minute to fill the portable unit.  When full, there is a sputtering noise followed by a release of white oxygen vapor.  To release the portable unit, the user closes the vent valve lever and presses the reservoir release button.

Griffin signed a Plan of Service Agreement with Lincare and an Oxygen Orientation Checklist acknowledging she received an explanation of all safety warnings contained in the Manufacturer's Operating Manual and a copy of the manual.  She concedes she did not read the

---

[2] Unless otherwise indicated, the background facts are gleaned from Griffin's response to Lincare's statement of material facts (Doc. 39).  The Court cites to page rather than paragraph numbers because the paragraph numbers appear to be mislabeled.  Compare Doc. 25 ¶¶ 5-6, 7-8, 17-18 with Doc. 39 ¶¶ 6, 8, 18.

operating manual.  From September 9, 2008 to September 3, 2012, Griffin used the oxygen system without issue.  Lincare refilled the reservoir with liquid oxygen every two weeks.

On September 3, 2012, at 9:43 p.m., Griffin contacted Lincare's after-hours call center because she experienced difficulty removing the portable unit from the reservoir.  She informed the call center that oxygen was going all over.  The call center contacted Lincare's on-call Service Representative Layton Durkee who immediately returned Griffin's call.  Durkee provided instructions on how to remove the portable unit from the reservoir unit.  Griffin asserts he told her to shake the portable unit back and forth to release it and he did not remain on the line while she did this.  (Doc. 39 at 2.)  Lincare asserts, without citation, Durkee remained on the phone until the unit was released and that he gave instructions in accordance with the operating manual.  See Doc. 25 ¶ 17.  The Manufacturer's Operating Manual (the "Manual") states:

> Note:  If the units will not disengage easily, they may have become frozen.  DO NOT USE FORCE.  Simply allow a few minutes for the frozen parts to warm, then disengage the Portable when the ice has melted.

The unit continued to emit oxygen vapor after the portable unit was removed from the reservoir.  Griffin opened all her windows because the room had filled with vapor.  (Doc. 39 at 2.)

Griffin agrees the oxygen that came in contact with her foot was not liquid.  Id.  On the morning of September 4, 2012, Griffin discovered bleeding from the bottom of her right foot.  (Doc. 25-1 at 13 (Griffin Dep. Tr. 91:1-10).)  She immediately sought medical treatment and was diagnosed with frostbite and second degree burns.  Due to her neuropathy, Griffin did not feel pain in connection with the injury.  She asserts she was not exposed to any other source of extreme cold or heat that could have caused her injury from the evening of September 3 until the morning of September 4, 2012, when she noticed the bleeding.  (Doc. 39 at 3.)  She testified during her deposition that the cause of her injury was oxygen vapor emitted from the oxygen system.

Lincare contends, relying on its expert, that the temperature of oxygen vapor is not low enough to freeze skin on contact and could not have caused Griffin's injury.  (Doc. 25 ¶ 26.)  Griffin disputes this assertion (Doc. 39 at 3); Dr. Conway, who treated her injury, diagnosed her with a frostbite injury "caused by her exposure to leaking oxygen gas coming from the liquid oxygen tank." (Doc. 39-4 ¶¶ 2, 4.)

III.   Discussion

A.     Motion to Exclude Expert Testimony

The decision to admit or exclude expert testimony lies in the Court's discretion and will not be deemed an abuse of discretion unless it is manifestly erroneous.  Lippe v. Bairnco Corp., 99 F. App'x 274, 278 (2d Cir. 2004).  The admissibility of testimony is governed by the principles of Federal Rule of Evidence 104(a).  Under that Rule, a party proffering expert testimony has the burden of establishing admissibility by a preponderance of proof.  See Bourjaily v. United States, 483 U.S. 171 (1987).  Under Federal Rule of Evidence 702, the Court has discretionary authority to determine reliability in light of the particular facts and circumstances of the particular case.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999).  If the Court finds that the evidence is admissible, the opposing party may still contest the weight of the evidence within the adversarial system. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Griffin has disclosed David Dodge as an expert witness and he prepared a "Preliminary Accident Investigation Report."  (Doc. 23-4 at 1-4.)  Dodge is a Certified Safety Professional with a

degree in Marine Engineering.  (Doc. 23-4 at 12-13 (Dodge Prof'l Resume).)  Since 1986, he has worked in safety and forensic consulting, performing accident analysis in the areas of safety, worker/machinery accidents, products liability and safety programming, risk evaluation, and accident investigation for manufacturing companies.  Id.

Dodge's written report states Griffin "was injured because she got improper information when she called Lincare for assistance when she could not remove the portable unit from the reservoir," and concludes the advice Lincare's Service Representative gave Griffin "to shake the portable [unit] back and forth to free it from the reservoir, was in defiance of the manufacturer's instructions and was the direct cause of her injury."  (Doc. 23-4 at 2-4.)  At his deposition, Dodge stated the scope of his work in this case was to determine (1) whether the Lincare service representative's instructions on September 3 were adequate and (2) whether the manufacturer's operating instructions were adequate.  (Doc. 23-5 at 11 (Dodge Dep. Tr. 58:2-11).)

While Dodge ultimately determined the manufacturer's instructions were adequate (Doc. 23-5 at 12 (Dodge Dep. Tr. 59:3-5), the Court excludes the opinion because "the question of whether a manufacturer provided adequate warnings about foreseeable dangers is a question of fact properly left to the jury."  Webb v. Navistar Int'l Transp. Corp., 692 A.2d 343, 345 (Vt. 1996) (citing McCulloch v. H.B. Fuller Co., 981 F.2d 656, 658 (2d Cir. 1992)).

Likewise, Dodge's opinion that the Lincare Service Representative's advice was in defiance of those instructions also intrudes on the province of the factfinder because it is a matter capable of being understood and decided without an expert's help.  United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (an expert will be permitted to testify if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue").  This opinion is also excludable because it accepts Griffin's version of a disputed issue of fact as discussed more fully below.

Lastly, Dodge's opinion that the Lincare Service Representative's advice was the cause of Griffin's injury is based on his acceptance of her version of the facts. See Doc. 23-4 at 2 ("She describes that she called . . . Lincare . . . and was told to shake the portable" and "Ms. Griffin took the advice given to her"). Lincare disputes that Durkee, its service representative, advised Griffin to shake, rock or twist the portable unit to remove it from the reservoir. (Doc. 23 at 4, 11). Dodge did not inspect the portable or reservoir unit or perform any tests. Indeed, Griffin concedes the oxygen system "unit has never been tested so the reason why it leaked is not known." (Doc. 39 at 2.) Accordingly, Dodge is not testifying as an expert based on specialized knowledge in opining Durkee's instructions "caused" Griffin's injury; he is "acting as a conduit for another witness's testimony in the guise of an expert's opinion." See Rotman v. Progressive Ins. Co., 955 F. Supp. 2d 272, 283 (D. Vt. 2013) (excluding expert opinions repeating the testimony of another to arrive at a theory of causation).

In her opposition to Lincare's motion, Griffin asserts the following opinions of Dodge: (1) "a consumer who called the safety expert designated by Defendant as the proper person to call in case of an emergency had a reasonable expectation to rely on that expert's advice and that this advice would override anything that was written in the manufacturer's safety manual, whether or not Mrs. Griffin actually read it," (Doc. 26 at 8 (citing Dodge Dep. Tr. 29:24-30:24)) and (2) "given the situation of an actively leaking canister of liquid oxygen the instructions given by the Lincare representative should have been to stay away from the unit rather than putting her in close proximity to the hazard," id. at 9 (citing Dodge Dep. Tr. 64:3-65:11). Federal Rule of Civil Procedure 26(a)(2) requires a party's expert witness disclosure include a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). These opinions of Dodge are excluded because they were not

disclosed and therefore cannot be considered. Gustafson v. Am. Family Mut. Ins. Co., No. 11-cv-1303, 2012 WL 5904048, at *8 (D. Colo. Nov. 26, 2012) (excluding expert opinions arising from questioning during the expert's deposition that were outside the scope of the expert's report).

Accordingly, the Court, in its discretion, GRANTS Defendant Lincare's motion in limine to exclude the testimony of David Dodge (Doc. 23).

B.     Motion for Summary Judgment

Lincare moves for summary judgment arguing Griffin cannot establish a defective condition in the oxygen system or that a defect in the system caused her injuries, essential elements of her strict liability claim, and that she cannot prove a causal link between an action of Lincare and her injuries, an essential element of her negligence claim. (Doc. 24.)

1.     Legal Standard

Summary judgment is appropriate only where the parties' submissions show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must resolve ambiguities and draw inferences in favor of the non-moving party. Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted). The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted). Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. See, e.g., Fed. R. Civ. P. 56(e) 1963 advisory committee's note; Anderson, 477 U.S. at 255.

2.      Strict Product Liability Claim

Under Vermont law, a manufacturer is strictly liable for harm resulting from a defective product that reaches a user without undergoing substantial change.  Kinney v. Goodyear Tire & Rubber Co., 367 A.2d 677, 679 (Vt. 1976).  "A defective product must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."  Webb v. Navistar Int'l Transp. Corp., 692 A.2d 343, 346 (Vt. 1996) (citation and internal quotation marks omitted). Plaintiff bears the burden of proving the product is defective and that its defect was the proximate cause of the harm.  Id.  Accordingly, to withstand summary judgment, Griffin must establish that her evidence would allow a jury reasonably to conclude that a defect in the oxygen system was unreasonably dangerous, and therefore defective and the defect was a proximate cause of her injury.

Griffin has pointed to no evidence of a defect in the oxygen system.  She has done no more than assume a defect in the oxygen system existed.  She has conceded the "unit has never been tested so the reason why it leaked is not known."  (Doc. 39 at 2.)  While under Vermont law, circumstantial evidence may be accepted in a products liability action,  Travelers Ins. Cos. v. Demarle Inc., USA, 878 A.2d 267, 272 (Vt. 2005), more than a mere "possibility, suspicion or surmise" of a defect is required to survive summary judgment.   Hershenson v. Lake Champlain Motors, Inc., 424 A.2d 1075, 1077 (Vt. 1981).  The oxygen system functioned without issue for almost four years--from September 9, 2008 to September 3, 2012.  In these circumstances, a reasonable jury could not find there was a defect in the oxygen system much less that it was unreasonably dangerous and caused Griffin's injury.  Even if a reasonable jury could conclude a defect in the oxygen system was the probable cause of the leak, it could not reasonably infer the defect was not due to any post-purchase mishandling or misuse.  Compare Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, (2d Cir. 2007) (holding a reasonable jury could

conclude a defect in a coffee maker was the more probable cause of a fire occurring the first time the coffee maker was used and an expert eliminated all other possible sources of ignition). Accordingly, Griffin's strict product liability claim cannot survive summary judgment and is dismissed.

        3.    <u>Negligence Claim</u>

Griffin alleges Lincare was negligent because it failed to inspect and discover an unreasonably and/or inherently dangerous defect or design in the oxygen system and because it failed to instruct her in accordance with the Manufacturer's Operating Manual.  <u>See</u> Compl. ¶¶ 22-27; Doc. 38 at 7.

Under Vermont law, negligence requires a legally cognizable duty owed by the defendant to the plaintiff, a breach of that duty, that the breach was the proximate cause of plaintiff's injury, and damages.  <u>Carvalho v. Grzankowski</u>, 36 F. Supp. 3d 423, 428 (D. Vt. 2014) (citing <u>Powers v. Office of Child Support</u>, 795 A.2d 1259, 1265 (Vt. 2002)).  The existence of a duty is primarily a question of fact.  <u>Powers</u>, 795 A.2d at 1265.  "Generally, whether there is a cognizable legal duty that supports a tort action depends on a variety of public policy considerations and relevant factors." <u>Hamill v. Pawtucket Mut. Ins. Co.</u>, 892 A.2d 226, 228 (Vt. 2005).  Causation requires both "but-for" and proximate causation.  <u>Collins v. Thomas</u>, 938 A.2d 1208, 1211 (Vt. 2007).  A plaintiff must show:  (1) the harm would not have occurred "but for" the defendant's conduct such that the "tortious conduct was a necessary condition for the occurrence of the plaintiff's harm," and (2) the defendant's negligence was "legally sufficient to result in liability such that liability attaches for all the injurious consequences that flow from the defendant's negligence until diverted by the intervention of some efficient cause that makes the injury its own."  <u>Id.</u> (internal quotation marks and citations omitted).  Proximate cause is ordinarily characterized as a jury issue.  <u>Id.</u>

As discussed above, Griffin's failure to point to any evidence of a defect in the oxygen system is fatal to her negligence claim alleging failure to inspect and/or discover a defect just as it was fatal to her strict product liability claim.  Accordingly, her theory of Lincare's negligence for failure to inspect and discover an unreasonably and/or inherently dangerous defect or design in the oxygen system is dismissed.

Plaintiff also maintains she would not have been injured but for the Lincare Service Representative's unreasonable advice that put her in close proximity to the leaking oxygen system. There is a dispute regarding what advice the representative gave Griffin during the telephone conversation on the night of September 3.  Crediting Griffin's testimony, Durkee, the Lincare Service Representative, advised her to keep shaking the portable unit until it separated from the reservoir unit.  Griffin Dep. Tr. 72:19-20 ("he kept telling me to shake it"), 75:15-20 ("he told me to keep shaking it . . . to try to get it off), 77:15-21 ("he said 'Well, you shake it harder.'").  This advice was in conflict with the Manual which states:  "If the units will not disengage easily, they may have become frozen.  DO NOT USE FORCE."  The portable unit should have released when Griffin closed the vent valve lever and pressed the reservoir release button.  Griffin also averred that she "did not come in contact with any sources of extreme cold or heat that could have resulted in the burn to [her] foot either before or after the incident with the oxygen tank."  (Doc. 39-2 ¶ 6.)  Finally, Dr. Matthew Conway, who treated Griffin on September 4, avers the "nature of [Griffin's] injury was consistent with exposure to cryogenic oxygen gas," and "Ms. Griffin's injury to her right foot was caused by her exposure to leaking oxygen gas coming from the liquid oxygen tank."  (Doc. 39-4 ¶¶ 2, 4.)

Lincare points to expected testimony from its expert, Dr. Giuseppe Petrucci, an analytical chemist and Professor of Chemistry at the University of Vermont, that the temperature of oxygen

vapor is not low enough to freeze skin on contact and could not have caused Plaintiff's injury. (Doc. 24 at 5, 16; Doc. 42 at 3; see also Doc. 25-4.)  Lincare argues it "is scientifically impossible for oxygen vapor to burn skin."  (Doc. 42 at 3.)  It asks the Court to unequivocally accept it's expert's opinion.  The weighing of evidence, however, is a matter for the jury, not for the court on a motion for summary judgment.

When viewed in the light most favorable to the party opposing summary judgment, conflicting facts require consideration by a trier of fact.  Examined in the light most favorable to Griffin, the admissible evidence, including her testimony and that of Dr. Conway, permits a reasonable inference that she was injured while standing in close proximity to the leaking oxygen system as she attempted to remove the portable unit from the reservoir in accordance with the Lincare Service Representative's instructions.  Fischl, 128 F.3d at 56.  Accordingly, Lincare's motion for summary judgment is denied as to Griffin's negligence theory that Lincare failed to instruct her in accordance with the Manufacturer's Operating Manual.

IV.    Conclusion

For the reasons stated above, Lincare's motion in limine (Doc. 23) is granted and the motion for summary judgment (Doc. 24) is granted in part and denied in part.

The summary judgment motion is granted as to Griffin's strict product liability claim. Accordingly, Count I of the complaint is dismissed.  The motion is granted as to her negligence claim alleging Lincare failed to inspect and discover an unreasonably and/or inherently dangerous defect or design in the oxygen system and denied as to her negligence claim alleging Lincare failed to instruct her in accordance with the Manufacturer's Operating Manual.

The parties engaged in an Early Neutral Evaluation ("ENE") session on July 30, 2015, with no settlement or stipulation to narrow the scope of the dispute.  (Doc. 19.)  A second ENE session

shall be scheduled with Attorney Spink on or before September 1, 2016.  In the event the case does not settle, it will be placed on the next available trial calendar after September 1, 2016.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 19th day of July, 2016.

/s/ J. Garvan Murtha
Hon. J. Garvan Murtha
United States District Judge